**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**August 23, 2012**

# In the Court of Appeals of Georgia

A12A1176. STOWERS v. BRANCH BANKING & TRUST CO.

McFADDEN, Judge.

William Gray Stowers appeals the grant of summary judgment to Branch Banking & Trust Company ("the bank") in his suit for breach of contract. Stowers argues that the bank's rescission of a foreclosure sale at which he was the high bidder does not come within the "safe harbor" provision of OCGA § 9-13-172.1. Under that statute, in certain circumstances, when a foreclosing lender rescinds a foreclosure sale, the high bidder's damages are limited. Although we agree with Stowers that under the law as it currently exists the bank's reason for rescinding the sale was unsound, we decline to apply that law retroactively and conclude that the rescission falls within the safe harbor provision. We therefore affirm the bank's summary judgment.

The bank foreclosed on a property securing a note. Stowers was the high bidder at the non-judicial foreclosure sale. Stowers tendered a cashier's check for the bid amount, and the bank gave him a memorandum of sale. Before the bank had executed a deed under power in favor of Stowers, the debtor's attorney contacted the bank, asserting that the bank's notice to the debtor of the foreclosure sale was defective in that it did not comply with the requirement at OCGA § 44-14-162.2 that it identify "the individual [with] full authority to negotiate, amend, and modify all terms of the mortgage." The bank agreed with the debtor that the notice was defective and renegotiated the terms of the debt with the debtor.

The bank notified Stowers that it was rescinding the foreclosure sale under the safe harbor provision at OCGA § 9-13-172.1. Under that statute, in certain circumstances, "the damages that may be awarded to the purchaser in any civil action are limited solely to the amount of the bid funds tendered at the sale plus interest on the funds at the rate of 18 percent annually, calculated daily." OCGA § 9-13-172.1 (d) (3). One of those circumstances is failure to comply with the statutory requirements for the sale. Id.

2

The bank rescinded the sale under the belief that its notice to the debtor did not comply with OCGA § 44-14-162.2. The notice listed the bank's attorney as the person having "full authority to negotiate, amend, and modify all terms of the mortgage," but the attorney would have had to consult with his client about any modification. The bank tendered a check to Stowers for the bid funds plus interest at 18 percent.

Stowers filed this action, seeking damages for the bank's breach of contract and bad faith attorney fees. Stowers appeals the grant of the bank's motion for summary judgment.

1.      Stowers argues that the bank's notice to the debtor was not defective under OCGA § 44-14-162.2 (a), and therefore the bank could not avail itself of the safe harbor provision of OCGA § 9-13-172.1 (d) (1). Stowers argues that under its plain terms, as well as under the holding in *TKW Partners v. Archer Capital Fund*, 302 Ga. App. 443 (691 SE2d 300) (2010), the notice complied with the statute. We do not agree. The notice did not fully comply with the plain terms of the statute: the holding of *TKW* is that substantial compliance is sufficient. We conclude that for purposes of this case *TKW* should not be applied retroactively.

OCGA § 44-14-162.2 (a) sets out the notice requirement.

3

Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract . . . shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor.

The notice at issue was sent by the bank's law firm to the debtor and identified the lender as Branch Banking and Trust Company. It stated:

Please note that the following person has full authority to negotiate, amend, and modify all terms of the mortgage with you and can be contacted as follows:

Martin G. Quirk
6000 Lake Forrest Drive
Suite 325
Atlanta, Georgia 30328
404-252-1425

If you want to discuss any aspect of this matter, please contact us immediately. Any communication should be directed to this Law Firm and not directly to the Lender.

The plain terms of the statute require that the notice "include the name, address, and telephone number of the individual or entity who shall have full authority to

negotiate, amend, and modify all terms of the mortgage with the debtor." The undisputed evidence is that Martin Quirk did not have full authority to modify the terms of the debtor's loan obligation. Rather, Quirk was authorized to receive communications from the debtor, to convey them to the bank, to make recommendations, and to convey the bank's position to the debtor. Although Quirk may have had apparent authority to act on the bank's behalf, the plain terms of OCGA § 44-14-162.2 (a) require the notice to "include the name, address, and telephone number of the individual or entity who [has] *full authority*" to modify the loan terms. (Emphasis supplied.)

Nevertheless, Stowers is correct that under our holding in *TKW*, 302 Ga. App. at 443, the notice the bank sent to the debtor complies with the statute. Like the notice at issue here, the notice in *TKW* included the name, address and telephone number of the lender's attorney. Id. at 446 (1). We rejected the argument that – because the attorney did not have full authority to negotiate, amend and modify the loan, and the notice listed no entity or individual with such authority – the notice failed to comply with OCGA § 44-14-162.2. Id. We concluded that "the statute does not require the individual or entity be expressly identified as having 'full authority to negotiate, amend, and modify all terms of the mortgage.'" Id. Rather, substantial compliance

5

with the notice provision of OCGA § 44-14-162.2 is sufficient. Id. But see *Reese v. Provident Funding Assoc.*, __ Ga. App. __, __ (__ SE2d __) (Case No. A12A0619, decided July 12, 2012) (rejecting trial court's ruling that substantial compliance was sufficient and finding that notice of foreclosure violated OCGA § 44-14-162.2 because it identified loan servicer instead of the secured creditor with the authority to foreclose). Consequently, under *TKW*, the bank's notice in this case was not defective, and it was not obligated to rescind the foreclosure sale on that basis.

But at the time the bank rescinded the sale, the notice provision, which became effective May 13, 2008, Ga. L. 2008, p. 624, § 2, had not been interpreted. We decided *TKW* three weeks after the rescission. The question, then, is whether the holding of *TKW* applies retroactively to this case.

The general rule is that judicial decisions apply retroactively. *Findley v. Findley*, 280 Ga. 454, 459 (1) (629 SE2d 222) (2006). We apply that general rule

> unless the decision itself expressly makes it a matter of pure or selective prospectivity or, after examining whether retroactive application would adversely affect operation of the new rule and weighing the inequity imposed by retroactive application, we subsequently conclude application of the new rule would cause unjust results to those who justifiably relied on the former state of the law. In so doing, the criteria

6

set out in *Chevron Oil* [*v. Huson*, 404 U. S. 97 (92 SC 349, 30 LE2d 296) (1971)], may be employed.

*Findley*, 280 Ga. at 460 (1). As restated in *Flewellen v. Atlanta Casualty* , 250 Ga. 709, 712 (3) (300 SE2d 673) (1983), the criteria of *Chevron Oil* require a court to:

> (1) Consider whether the decision to be applied nonretroactively established a new principle of law, either by overruling past precedent on which litigants relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. (2) Balance … the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation would further or retard its operation. (3) Weigh the inequity imposed by retroactive application, for, if a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of nonretroactivity.

Following these criteria, we conclude that *TKW* does not apply retroactively to this case.

(1) As we noted above, *TKW* decided an issue of first impression and established a new principle of law: that substantial compliance with the contact

7

information requirement of OCGA § 44-14-162.2 (a) is sufficient. *TKW* is silent as to any retroactive application.

(2) Applying this new principle of law to the instant case would neither further nor retard the operation of the principle. On the other hand, declining to apply the principle here would be consistent with the legislature's intent in enacting OCGA § 42-14-162.2, which, among other things, was to make "transparent . . . the identity (and contact information) of the party with authority to agree to a loan modification." (Citation omitted.) *Reese*, __ Ga. App. at __ (1). The bank rescinded the sale because of the notice's failure to give the contact information of the party with authority to agree to a modification.

Declining to apply the principle here would also further the legislature's intent in enacting OCGA § 9-13-172.1, which was "to create a mechanism to give homeowners every opportunity to cure a default and avoid the harmful and disturbing effects of foreclosure." *JIG Real Estate v. Countrywide Home Loans*, 289 Ga. 488, 492 (2) (b) (712 SE2d 820) (2011). The bank's conclusion that its notice did not comply with the statute, and therefore that it was obligated to rescind the foreclosure, gave the debtor another opportunity to cure the default and to avoid foreclosure. And the debtor availed herself of that opportunity.

8

(3) As the trial court found, the equities weigh strongly in the bank's favor against retroactive application. The bank's interpretation of the statute was reasonable. It furthered the intent of the legislature's enactment of the notice and safe harbor provisions. And within a month of the sale, the bank returned to Stowers the bid funds plus interest at 18 percent. The equities are important; Georgia courts

> have . . . declined to give retroactive effect to a judicial decision when the particular equities of a subsequent case establish that selective prospectivity (i.e., the new rule is applied to the case in which it is announced and the former rule is applied to other litigants in similar situations whose cases arise on facts that pre-date the pronouncement of the new rule) is more just.

*Findley*, 280 Ga. 459-460 (1). This is such a case.

2. Stowers argues that he is entitled to damages for the bank's breach of the memorandum of sale. Pretermitting whether the memorandum of sale is an enforceable contract, the recession provisions of OCGA § 9-13-172.1 by their terms allow a foreclosing lender to rescind a foreclosure sale. The memorandum of sale simply memorialized certain aspects of the foreclosure sale; rescinding the foreclosure sale also rescinded the memorandum of sale.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*